STATE ex rel. BOARD OF EDUCATION et al. v. STATE BOARD OF EDUCATION.

No. 32964.    Oct. 21, 1947.

George H. Jennings, of Sapulpa, for plaintiffs in error.

Mac Q. Williamson, Atty. Gen., and J. H. Johnson and Richard M. Huff, Assts. Atty. Gen., for defendants in error.

DAVISON, V.C.J.  In this action the board of education of the city of Sapulpa, State of Oklahoma, individually and as relator, seeks a peremptory writ of mandamus to compel the defendants, State Board of Education of the State of Oklahoma, its director of finance, and the State Auditor, to pay over to it $7,961 alleged to be the balance due on the amount of State Aid funds apportioned to it to maintain a minimum program of education. The lower court denied the writ and plaintiff has appealed.

The amount of money necessary for plaintiff to maintain a minimum program of education as defined by 70 O.S. Supp. 1943, §651.4, as amended, for the 1945-46 school year, was $172,898.38. The minimum program income of plaintiff for the same year, as defined by the above statute, was originally computed by including therein the estimated state apportionment of earnings of the State School Land Commission and automobile license fee collections.

The difference between the cost of a minimum program and the amount of the minimum program income, determines the amount to be apportioned and disbursed as State Aid, as provided by 70 O.S. Supp. 1943, §651.2, which in this instance was originally fixed at $94,949.

On April 23, 1946, the final payment was made by the defendants to plaintiff which, with all former payments, totaled $86,988, or $7,961 less than the original figure. Previous to this date the actual apportionments from the earnings of the School Land Commission and from automobile license fee collections exceeded the estimated income from these sources, in the same amount, $7,961.

This action was brought to enforce payment of this balance of the original amount. The question for determination herein is the meaning of the following statutory provisions:

70 O.S. Supp. 1943, §651.2:

"(a) The funds apportioned and disbursed to the several school districts of the state shall be for the purpose of aiding each school district or separate school receiving the same to finance its school budget for each fiscal year. The State Board of Education shall notify the School District Board or the Board of Education of each district, the County Treasurer, and the County Excise Board of the amount said district is to receive from the funds apportioned under the provisions of this Act and disbursed according to the provisions hereof. Thereafter, if the State Board of Education should ascertain that any of the factors on which the apportionment or allocation of State Aid to any school district, have so changed as to disqualify such district or to reduce the difference between the cost of the minimum program and the amount of minimum program income, then the State Board of Education shall forthwith notify such school board or board of education, and the treasurer thereof, as to the amount of reduction in State Aid; . . ."

70 O.S. Supp. 1943, sec. 651.4 (2) (a) as amended:

"(2) Minimum Program Income

"(a) Income from a levy of Eleven (11) mills actually made by a school district in a county having a current assessed valuation of less than five million ($5,000,000) dollars, and income from a levy of twelve (12) mills actually made by a school district in a county having a current assessed valuation of five million ($5,000,000) dollars or more, and as to separate schools a levy of one and three-tenths (1.3) mills actually made in any county, regardless of the assessed valuation thereof.

"(b) State Apportionment

"(c) County Apportionment

"(d) Gross Production Tax

"(e) One-half of the Federal Indian Tuition based upon the previous year's collection

"(f) Intangible Tax

"(Each of the above named items of chargeable income from (a) to (f) inclusive, shall be the net income after taking the delinquency of ten per cent (10%).

"(g) Funds provided by the Federal Government for the payment of teachers' salaries not used by the districts to supplement the salaries of teachers as provided in this Act.

"(h) Tuition for orphan children in full, with no delinquency for collection, and based upon the amount appropriated or contracted by the state for each fiscal year.

"(i) Transfer fees, as are now or shall hereafter be provided by law, in an amount equal to seventy five (75%) per cent of the amount which has been or could be so appropriated in the budgets of the sending districts for the use and benefit of the receiving districts.

"(j) And all other revenue receipts now provided by law, or which shall hereafter be provided by law, not including surplus cash and taxes in process of collection and not including tuition fees received from pupils or their parents."

A recent reiteration by this court of the rule governing statutory construc-

tion is found in Russett School Dist. No. C-8 of Johnston County v. Askew, 193 Okla. 102, 141 P. 2d 575:

". . . As has often been said the cardinal rule in such cases is to ascertain and give effect to the legislative intention."

From a careful reading of the above-quoted statutes, it can be clearly seen that the purpose and intent of the Legislature in enacting these laws was to provide funds to supplement those already allocated or earmarked for school purposes, sufficient to enable all public schools to maintain a minimum program of education. What constitutes such a minimum program is set out in the first subdivision of section 651.4 of title 70 O.S. Supp. 1943, as amended. The second subdivision, quoted above, defines the items of income denominated minimum program income, which, by former enactments, have been made available to the school districts. Realizing that such funds would not be sufficient for the maintenance of the extended educational program contemplated, the Legislature provided for these additional funds from the State Treasury.

It was not the purpose of the law-making body that said State Aid should be used to build up a cash surplus. It will be noticed, in the definition of minimum program income contained in this second subdivision, that each item is definitely ascertainable at some time during the school year. In order for the excise board to make a valid appropriation for support of the minimum program in excess of income and revenue provided by the locally applicable tax income statutes, the State Board of Education, in a manner, guarantees the needed difference, early enough in the fiscal year for the making of these appropriations. If, then, during the year the amount of actual income varies from the amount originally anticipated "to reduce the difference between the cost of the minimum program and the amount of the minimum program income, then the State Board of Education shall forthwith notify such school board or board of education, and the treasurer thereof, as to the amount of **reduction** in State Aid. . . ." (Sec. 651.2, supra.)

In the instant case, the receipts of the plaintiff from apportionment of earnings of the School Land Commission and from automobile license tag sales exceeded the anticipated amount of these items by $7,961. Therefore, the amount of State Aid necessary to supplement plaintiff's minimum program income sufficient to meet the demands of its appropriation was correspondingly less. The only appropriation of the funds is made by the county excise board. The burden placed on the State Board of Education is of allotting additional funds necessary to meet the appropriations. In the instant case that was done, although it did not require as much money as originally contemplated.

This case does not involve a reduction of State Aid to the extent that the total income of a school district falls short of the appropriation, nor do we decide that question. Having reached the above conclusion, it is not necessary to consider the question of the availability of money necessary to pay plaintiff the sum requested.

"Mandamus is not a writ of right, but one resting within the sound judicial discretion of the court, and will not be awarded when the right to the relief sought is not clear and free from doubt." Clarence L. Boyd Co. v. Blachly, Co. Clerk, 171 Okla. 626, 43 P. 2d 462.

Plaintiff did not show itself clearly entitled to the issuance of the writ and the trial court did not abuse its discretion in denying the same.

The judgment is affirmed.

HURST, C.J., and RILEY, BAYLESS, WELCH, CORN, GIBSON, and LUTTRELL, JJ., concur.